**UNITED STATES DISTRICT COURT**
**SOUTHERN DIVISION OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DARIN DUNCAN,** | )( | |
| **Plaintiff,** | )( | **CIVIL ACTION NO.: 4:09-CV-_____** |
| **V.** | )( | |
| **UNIVERSITY OF TEXAS HEALTH** | )( | |
| **SCIENCE CENTER at HOUSTON,** | | |
| | )( | |
| **Defendant.** | | |

### PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES Plaintiff Darin Duncan (Lt. Duncan) and files this original complaint against the University of Texas Health Sciences Center at Houston (UTHSCH) and will show the Court the following (each referenced exhibit is to be considered as if fully set forth herein):

### I.      STATEMENT OF THE CASE

1.      Lt. Darin Duncan, a Rice MBA graduate, was a fourth year medical student at the University of Texas Health Science Center at Houston who was expelled, even though his grades were good, for "noncognitive" reasons.  The "noncognitive" reasons were never made clear to provide Darin with the minimum of due process notice requirements.   When considering UTHSCH's stated reasons for dismissal such reasons did not constitute grounds for expulsion as set forth in the Student Handbook.  Lt. Duncan suffers from very severe Major Depressive Disorder[1] and any stated reasons for his dismissal were the result of such disability for which he is now receiving treatment.

---

[1] UTHSCH performed a "forensic" psychological examination of Lt. Duncan pursuant to a disciplinary action and failed to diagnose the very severe Major Depressive Disorder of which Lt. Duncan was later diagnosed.

## II.      JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction over plaintiff's claims under 28 U.S.C. § 1331 as plaintiff's claims arise under 42 USC Section 1983; Title II of the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and the United States Constitution. Supplemental jurisdiction exists, under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims, if any.

3.      Venue is proper in the Southern District of Texas under 28 U.S.C.A. § 1391 as the relevant incidents occurred therein.

## III.     PARTIES

4.      Plaintiff Darin Duncan is an individual and a resident of Harris County, Texas.

5.      Defendant University of Texas Health Science Center at Houston is within The University of Texas System and the University of Texas. UTHSCH may be served with process herein by serving its President, Larry R. Kaiser, M.D., 7000 Fannin, Suite 1200, Houston, Texas 77030, or the Board of Regents of the University of Texas System, 201 W. 7th St., Austin, Texas 78701.

## IV.     FACTS

6.      1st Lieutenant Darin Duncan ("Lt. Duncan"), is 38 years old and until the Fall of 2008 was a fourth year medical student at University of Texas Health Science Center at Houston. UTHSCH is a public entity that receives vast federal financial assistance.  Lt. Duncan is a Rice University MBA graduate, a University of Texas Master's graduate in accounting and was a Certified Public Accountant.

7.      Lt. Duncan was a great medical student who saved a life.  While Darin was

performing his Internal Medicine Ward service rotation Professor Ikenna Ogbaa, M.D., credited Darin's attentiveness and ability to provide an on-the-spot complete medical history to alert the hospital staff to a patient in a critical arrhythmia due to a large bilateral pulmonary emboli. **Exhibit 1.**

8.      Lt. Duncan is a dedicated, capable medical officer in our military providing medical services to our military's most valuable human resources including the Rangers, Special Forces, and aviation and airborne personnel.  Colonel Charles Killingsworth, M.D., a director at the Michael E. DeBakey VA Medical Center, gushes with praise for Darin's medical services to our country.  **Exhibit 2.**

9.      In his 2nd year of medical school, 2006, Darin was suffering from depression and came up for school discipline by the Student Evaluation and Promotions Committee (SEPC) because of alleged unwanted (non-physical) romantic advances toward a female medical student, a Hispanic student took something Darin had wrote as demeaning to Hispanics, and Darin allegedly did not finish a portion of one class.  Darin was sent to a psychiatrist, Dr. Axelrad, by UTHSCH as part of the discipline process.

10.      While Lt. Duncan believed himself to be a patient of Dr. Axelrad's, and Axelrad's paperwork clearly refers to Lt. Duncan as a "patient," Dr. Axelrad now alleges he was performing a "forensic psychiatric evaluation" paid for by UTHSCH.[2]  Dr. Axelrad failed to diagnose Darin with a mental health condition and wrote that Darin's disciplinary behaviors could not be attributed to any "significant psychiatric problems or disorders."

11.      Dr. Axelrad did further opine that Lt. Duncan had integrated the three disciplinary

---

[2] From records released by Dr. Axelrad prior to filing suit.

situations and was motivated to continue in medical school.  Lt. Duncan was allowed to continue his medical school education.

12.     In his last year of medical school in June, 2008, Lt. Duncan took Cardiology and passed but received a "marginal performance" which does not warrant SEPC scrutiny or dismissal under the written policies and procedures of UTHSCH.[3]  Despite dismissal under the circumstance being fully against UTHSCH written policies Lt. Duncan was dismissed from medical school by the SEPC.

13.     In an appeal letter to Dean Giuseppe N. Colasurdo M.D. August 4, 2008, Lt. Duncan attributes his problems to depression that UTHSCH's contractor Dr. Axelrad had not diagnosed.  Despite bringing up the fact that he should not be dismissed under UTHSCH's written rules and that he suffered from depression Dean Colasurdo queried no further and instead affirmed Darin's dismissal by letter dated September 29, 2008.

14.     Lt. Duncan was correctly diagnosed on October 9, 2008, with "very severe" Major Depression.

15.     During medical school and due to his depression Lt. Duncan suffered sleep problems on a continuous basis and had frequent problems with concentration.  Darin had problems with his interactions with others because of his depression and experienced high stress. Lt. Duncan's learning ability was impaired due to the depression.  The situations that brought Lt. Duncan before the SEPC were a result of depression even though the situation that he was eventually dismissed for--a marginal grade in Cardiology--is not grounds for dismissal.

---

[3] The UTHSCH Student Catalog clearly dictates that it takes a *complete class failure twice in one Semester* to even activate any academic scrutiny and then probation comes first--the medical school alleges no such probation or that Darin failed even one class in his last semester. *Academic Probation and Dismissal, 2007-2009 Student Catalog, page 44-45.*

16.     Armed with the recent diagnosis of very severe Major Depression and with the help from the undersigned lawyer Lt. Duncan again appealed his dismissal to Dean Colasurdo as well as informed H. Scott Caven, Jr., Chairman, Office of the Board of Regents of the University of Texas System; Kenneth I. Shine, M.D., Interim Chancellor, The University of Texas System, Executive Vice Chancellor for Health Affairs; Larry R. Kaiser, M.D., President; James R. Huffines, Vice Chairman of the Office of the Board of Regents University of Texas System; Robert B. Rowling, Vice Chairman of the Office of the Board of Regents University of Texas System; and L. Maximilian Buja, M.D., Executive Vice President for Academic Affairs, The University of Texas Health Science Center at Houston by letter dated November 3, 2008. **Exhibit 3.**  The letter allowed UTHSCH to reconsider the expulsion and to contact Lt. Duncan directly regarding accommodations for his depression.  UTHSCH did not provide Darin any due process procedure and as of the date of this filing has not made any changes to Darin's status.

## V.     ARBITRARY AND CAPRICIOUS

17.     Lt. Duncan's dismissal was arbitrary and capricious and no rational basis exists for the UTHSCH's decision.  *Mahavongsanan v. Hall,* 529 F.2d 448 (5th Cir. 1976).

## VI.     AMERICANS WITH DISABILITIES ACT

18.     Title II of the ADA provides, inter alia, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." **Id. § 12132.** The statute defines "qualified individual with a disability" as an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility

requirements for the receipt of services or the participation in programs or activities provided by a public entity.  **Id. § 12131(2).**  Title II is directed at governmental entities not individuals.

19.     To prevail on a Title II claim, a plaintiff must demonstrate: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Parker v. Universidad de Puerto Rico,* 225 F.3d 1, 5 (1st Cir. 2000).  Lt. Duncan was disabled as defined by the  ADA as he suffered from very severe major depression which effected major life activities. *42 U.S.C. §§12102, 12111(8).*

20.     Due to his depression Lt. Duncan suffered sleep problems and had frequent problems with concentration as well as had problems with his interactions with others.  Lt. Duncan's learning ability was impaired due to the depression.  The situations that brought Lt. Duncan before the SEPC for dismissal were a result of depression.

21.     UTHSCH could reasonably accommodate Lt. Duncan's disability with, for instance, simply a leave of absence so he could get treatment to resolve his mental healthcare issues, without fundamentally altering the nature of the UTHSCH program or by simply being aware of the manifestations of depression and considering them in the disciplinary process.[4]

## VII.    FREEDOM OF SPEECH

21.     Defendant claims that Lt. Duncan was expelled for "noncognitive reasons." While the reasons for Lt. Darin's dismissal are not clear e-mailing fellow medical students is protected Freedom of Speech and Expression pursuant to the First Amendment to the

---

[4] Due to the details of the UTHSCH's medical school program and the symptoms of depression further workable accommodations may come to light as litigation progresses.

Constitution the deprivation of which is actionable through 42 USC Section 1983

## VIII.   42 USC SECTION 1983

22.     A 42 USC Section 1983 claim requires that a state actor violate an individual's right.  While 42 USC Section 1983 is not a source of substantive rights it allows rights found elsewhere to be addressed in federal (and state) court.  Lt. Duncan had a Fourteenth Amendment right to due process both procedural and substantial yet these rights and the other rights--free speech, ADA rights, Section 504 of the Rehabilitation Act rights, right to be free from arbitrary and capricious state action, freedom of assembly and association, and freedom from overly vague requirements described herein were met with deliberate indifference by Defendant.  Dean Colasurdo and the SEPC were the policymakers when it came to dismissals and UTHSCH is liable for the decisions of its policymakers.  Lt. Duncan alerted other policymakers in the UT System (see Paragraph 16), however, though they were fully conscious of Lt. Duncan's right being violated they were wholly indifferent to these violations.

23.     Lt. Duncan was dismissed and denied due process procedures due to the policies, practices, customs and procedures of UTHSCH.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

## IX.     UNCONSTITUTIONALLY VAGUE

24.     Lt. Duncan was dismissed for standards that were unconstitutionally vague.  It is the most basic of justice principles that no scienter means no punishment.  A person cannot be dismissed for criteria so vague a person is not on notice what is prohibited.  The standard for vagueness was defined by the U.S. Supreme Court in *Grayned v. City of Rockford*: "[A] statute is unconstitutionally vague if it either: (1) fails to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited'; or (2) fails to 'provide explicit standards for

those who apply [the law].'"

## X.    CONTRACT

25.    The Student Handbook and the other written materials constituted a contract. UTHSCH breached the contract when they dismissed Lt. Duncan for reasons not found in the Student Handbook and explicitly forbidden by the Student Handbook and UT System rules and other writings signed or given to Lt. Duncan.

## XI.    VIOLATION OF FREEDOM ASSEMBLY AND ASSOCIATION

26.    The First Amendment provides that:

> **"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."**

27.    Defendant's unlawful acts of subjecting Lt. Duncan to disciplinary procedure including dismissal for emailing fellow students violated Lt. Duncan's fundamental right to freedom of association and assembly.

## XII.    PROCEDURAL AND SUBSTANTIVE DUE PROCESS

28.    UTHSCH's Student Handbook sets forth a disciplinary process, however, Lt. Duncan was not afforded the due process therein.  UTHSCH did not set up the necessary meetings and follow the procedure set forth in its  Student Handbook.  Nor did they allow Lt. Duncan to address his issue of very severe Major Depression.

29.    Procedural due process' function is to provide "an opportunity to be heard...at a meaningful time and a meaningful place," promoting fairness in dispute resolution. *Fuentes v. Shevin,* 407 U.S. 67 (1972).  The 5th and 14th Amendments require that deprivations of life,

liberty, or property activates due process guarantees.  Liberty interests are "those privileges long recognized as essential to the orderly pursuit of happiness by free men". *Meyer v. State of Nebraska,* 262 U.S. 390 (1923).

30.   Substantive due process places substantive limits on official power.  Procedural due process is concerned with the procedures in which the government acts. The difference is clear from the cases of *Londoner v. Denver,* 210 U.S. 373 (1908) and *Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441 (1915).  Read together, these precedents distinguish between the situation in which government singles out an individual for a deprivation based on the facts of a case, which triggers procedural due process requirements, and a broad rule affecting many people.  In the former situations the government must provide the procedural protections of notice and hearing; as the Supreme Court held in *Grannis v. Ordean,* 234 U.S. 385 (1914), "[t]he fundamental requisite of due process of law is the opportunity to be heard" (p. 394).

34.   Substantive due process requires at a minimum notice and an opportunity to be heard.  Defendants' failure to notify Lt. Duncan of the charges against him and give him notice of any hearing comprises a complete lack of any notice or any opportunity to be heard.

## XIII.   SECTION 504 OF THE REHABILITATION ACT

35.   Section 504 of the Rehabilitation Act states that "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under" any program or activity that either receives Federal financial assistance. The UTHSCH and UT System receives vast federal financial assistance and, as set for above, Lt. Duncan is a qualified individual with a disability who was denied the benefits of UTHSCH medical school program and was excluded from participating in UTHSCH's medical school education.  Also see Americans With Disabilities Act section above.

## XIV.   MENTAL ANGUISH

36.     Lt. Duncan suffered anxiety, apprehension, depression, fear, loss of sleep and loss of enjoyment of life due to defendant's acts and omissions.

## XV.     INJUNCTIVE RELIEF

37.     Lt. Duncan seeks injunctive relief in the form of a court order against UTHSCH to put Darin back into medical school, granting a leave of absence to address his mental health issues, a letter of good standing, that he receive a due process hearing on his newly diagnosed depression issue, and expunge his disciplinary record.

## XVI.   ATTORNEYS' FEES

38.     Lt. Duncan is entitled to recover attorneys' fees and costs to enforce his Constitutional rights under 42 U.S.C. Section 1983, Section 504 of the Rehabilitation Act, the ADA and under contract law from defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Darin Duncan requests that the Court enter judgment for Darin Duncan against the University of Texas Health Sciences Center at Houston and:

A.      Find that Plaintiff Darin Duncan is the prevailing party in this case and award attorneys' fees and costs;

B.      Award damages to Darin Duncan against Defendant for the violations of his rights under the First, Fifth, and Fourteenth Amendments and his rights under Texas contract law;

C.      Enter injunctive relief against Defendant

      1.      putting Darin Duncan back in UTHSCH medical school,

      2.      to provide a letter of good standing,

      3.      expunging his discipline record,

4        granting a leave of absence to address his mental health issues,

5.       to be given a due process hearing on his depression issue; and

D.       Grant such other and further relief as appears reasonable and just, to

which, Darin Duncan shows himself entitled.

RESPECTFULLY SUBMITTED,
LAW OFFICE OF RANDALL L. KALLINEN

/S/ Randall L. Kallinen

_____
Randall L. Kallinen
State Bar of Texas No. 00790995
Southern District of Texas Bar No.: 19417
Admitted, Fifth US Circuit Court of Appeals
511 Broadway Street
Houston, Texas 77012
Telephone:     713/320-3785
E-mail:          AttorneyKallinen@aol.com
Attorney for Plaintiff, Darin Duncan

## NOTICE OF ELECTRONIC FILING

I certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing document in accordance with the Electronic Case Filing System of the U.S. District Court for the Southern District of Texas, on this the 11th day March, 2009.

/S/ Randall L. Kallinen

_____
Randall L. Kallinen