**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DARIN DUNCAN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | CIVIL ACTION NO.H-09-715 |
| | § | |
| UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCE CENTER AT HOUSTON | § | |
| Defendant. | § | |

## ORDER

Pending before the Court are Defendant's Motion for Summary Judgment (Instrument No. 38) and Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence (Instrument No. 48).

I.

A.

Plaintiff, Darin Duncan ("Duncan" or "Plaintiff"), brings the instant suit against Defendant, the University of Texas Health Science Center at Houston ("UTHSC" or "Defendant"), for violating Section 504 of the Rehabilitation Act of 1973. (Instrument No. 1, at 9).[1] Plaintiff, a former medical student at UTHSC, alleges that Defendant violated his rights under Section 504 of the Rehabilitation Act by dismissing him from UTHSC in 2008. (Instrument No. 1, at 2-5, 9). Plaintiff seeks costs and attorneys' fees, damages, reinstatement as a medical student at UTHSC, a letter of good standing from UTHSC, expungement of his

---

[1] Plaintiff's Complaint makes additional claims for breach of contract, mental anguish, and violating the U.S. Constitution and Americans with Disabilities Act, . (Instrument No. 1, at 5-10). The Court dismissed these additional claims on September 4, 2009. (Instrument No. 18).

1

disciplinary record at UTHSC, the granting of a leave of absence from UTHSC to address mental health issues, a due process hearing from UTHSC on his depression issue, and other and further relief as appears reasonable and just. (Instrument No. 1, at 10-11).

### B.

In August 2004, Plaintiff entered the Medical School at UTHSC at Houston. (Instrument No. 38-1, at 7, 122). The Medical School administers a four-year curriculum for medical students seeking the degree of Medical Doctor (M.D.). (Instrument No. 38-1, at 5).

The Medical School's Policy and Guidelines for Medical Students ("Medical School Policies") govern the evaluation, promotion and dismissal of medical students. (Instrument No. 38-1, at 5, 15-62). Under the Medical School Policies, "[s]tudents must successfully complete all first and second year course work before proceeding to the third year." (Instrument No. 38-1, at 21). In addition, under the Medical School Policies, the faculty of the Medical School "has an obligation ... to promote and graduate only those who have demonstrated their suitability for the practice of medicine both in cognitive and noncognitive areas such as clinical ability, interpersonal relations, and personal conduct and professional characteristics." (Instrument No. 38-1, at 20). The faculty's responsibility for evaluating whether a student should be dismissed is administered through the Student Evaluation and Promotions Committee ("SEPC"). (Instrument No. 38-1, at 20). The SEPC may dismiss a student after a review of his complete record, including the student's grades, if the student's performance in noncognitive areas such as clinical ability, interpersonal relations, personal and professional characteristics makes him unsuitable for the practice of medicine. (Instrument No. 38-1, at 21).

A few months after beginning Medical School at UTHSC, a female student claimed that Plaintiff was harassing her. (Instrument No. 38-1, at 7-8). Plaintiff denies that he harassed the student. (Instrument No. 38-1, at 122-123). On January 31, 2005, in response to the allegation of harassment, Dr. Margaret C. McNeese ("Dr. McNeese"), the Associate Dean of Admissions and Student Affairs, met with Plaintiff. (Instrument No. 38-1, at 4, 7-8, 122-123). Dr. McNeese serves as a nonvoting member of the SEPC and provides input to the SEPC. (Instrument No. 38-1, at 7). Plaintiff was not referred to the SEPC. (Instrument No. 38-1, at 123). However, Dr. McNeese states that she told Plaintiff that any future incidents would be referred to the SEPC. (Instrument No. 38-1, at 8).

In February 2006, a Hispanic student complained about an article written by Plaintiff for medscape.com. (Instrument No. 38-1, at 8). The student was offended by the article's statements that "if you want to find illegals, go to the grocery store," and "in Hispanic culture, it seems you're supposed to be fat." (Instrument No. 38-1, at 8; Instrument No. 46, at 48). Dr. McNeese met with Plaintiff and the offended student, and a resolution acceptable to the offended student was reached. (Instrument No. 38-1, at 8; Instrument No. 46, at 48). Plaintiff was not referred to the SEPC. (Instrument No. 38-1, at 8).

In the spring of 2006, at the end of Plaintiff's second year in Medical School, Plaintiff received an "F" in Physical Diagnosis. (Instrument No. 38-1, at 123). Before beginning his third year course work, Plaintiff needed to pass Physical Diagnosis. (Instrument No. 38-1, at 8, 21). On July 13, 2006, in response to Plaintiff's "F" in Physical Diagnosis, the SEPC wrote Plaintiff a letter requesting that he appear in front of the SEPC committee on July 21, 2006. (Instrument No. 38-1, at 64).

3

Plaintiff states that at some time before the SEPC meeting, "I was very clear with her [Dr. McNeese] that I was – I thought I was sick.... [t]he term I used was acute depressive disor – epi – acute depressive episode. I believe that is the term I used." (Instrument No. 38-1, at 124).

On July 21, 2006, the SEPC committee met to discuss Plaintiff's record. (Instrument No. 38-1, at 125; Instrument No. 46, at 19). Before the Plaintiff appeared in front of the committee, the committee discussed not only Plaintiff's "F" in Physical Diagnosis, but the incident involving the female student who complained that he harassed her, and the incident involving the Hispanic student who was offended by his article. (Instrument No. 46, at 19).

Plaintiff then appeared before the SEPC committee. (Instrument No. 38-1, at 125; Instrument No. 46, at 19). The SEPC meeting notes state:

> When Dr. Colletti asked him [Plaintiff] if he had checked his Physical Diagnosis grades, he stated that he didn't like to check them because during his first year he checked his grades and found that he wasn't doing well in some course and that he became depressed.

(Instrument No. 46, at 20). Plaintiff also told the SEPC committee at least twice that he had been stressed. (Instrument No. 46, at 21). In addition, Plaintiff asked the SEPC committee if counseling would be an option for him. (Instrument No. 46, at 21).

After Plaintiff left the room, the SEPC meeting notes state:

> Dr. Yetman made note of Mr. Duncan's inappropriate attire at the meeting - his hands were dirty and he maybe was depressed.

> Dr. Yetman said that the Committee should either dismiss him or at the very least require a psychiatric evaluation. He also wanted to know whether this situation could be remediated if Darin were [sic] depressed and received appropriate counseling.

> [...]

> Dr. Mercer asked the Committee if they should request a psychiatric evaluation and Dr. McNeese replied that it was not necessary.

A vote was called for and the motion to dismiss was passed unanimously. (Instrument No. 46, at 21).

On July 24, 2006, the SEPC wrote Plaintiff a letter stating that he was dismissed from the Medical School based upon "this grade [in Physical Diagnosis] and in light of concerns about your suitability to practice medicine." (Instrument No. 38-1, at 71).

On August 9, 2006, Plaintiff wrote a letter appealing the dismissal to Dr. Jerry Wolinsky ("Dr. Wolinsky"), an interim Dean at the Medical School. (Instrument No. 38-1, at 73, 129). In the letter, although Plaintiff did not state that he was depressed, Plaintiff stated that Dr. McNeese had offered the school's counseling services to him. (Instrument No. 38-1, at 73). Plaintiff also stated that his goal was "to learn to better solve problems in a cooperative manner and in the face of significant personal stresses." (Instrument No. 38-1, at 73).    In addition to his written appeal, Plaintiff met with Dr Wolinsky. (Instrument No. 38-1, at 129). Dr. Wolinsky asked Plaintiff to have a psychiatric evaluation, and Plaintiff agreed. (Instrument No. 38-1, at 129).

In September and October of 2006, Plaintiff was evaluated by David Axelrad, M.D. ("Dr. Axelrad") and Arthur Tarbox, Ph.D. ("Dr. Tarbox"). Dr. Axelrad found that "there was no evidence that his [Plaintiff's] failure to complete his requirements in Physical Diagnosis was the result of an underlying pyschiatric disorder." (Instrument No. 39-1, at 11). Dr. Axelrad also found Plaintiff "presently does not require require any psychiatric intervention .. [and] does not have any significant psychiatric disorder or impairment." (Instrument No. 39-1, at 17). Dr. Tarbox found that "both current cognitive as well as psychological test data contraindicate any current significant psychiatric diagnosis." (Instrument No. 39-1, at 23).

On November 10, 2006, Dr. Wolinsky wrote a letter to Plaintiff stating that he should be reinstated in the school starting with the spring semester and could rebegin the third year after completing the Physical Diagnosis course.  Dr. Wolinsky also wrote: "[y]ou should be aware that any further irregular behavior will be grounds for your dismissal."  (Instrument No. 38-1, at 79).

In December 2006, Plaintiff passed the Physical Diagnosis course, and in January 2007, Plaintiff began his third-year course work.  (Instrument No. 38-1, at 11).  In one of his third-year courses, Plaintiff attempted to take an exam after two months, although the course was three months long, and although he did not have permission to do so.  (Instrument No. 38-1, at 133).  In response, the SEPC asked Plaintiff to appear at a meeting in July 2007.  (Instrument No. 38-1, at 11, 133).

On June 27, 2007, Plaintiff wrote a letter to the SEPC committee.  (Instrument No. 38-1, at 81-83).  In the letter, Plaintiff stated that during his second year of medical school, he "began having feelings of hopelessness, diminished energy levels, to cut myself off from my friends, to stop going to church, and to feel constantly overwhelmed... I can't make someone feel what I felt with words, I can just tell you that everything hurt."  (Instrument No. 38-1, at 81).  With respect to his mental state at the time he wrote the letter, Plaintiff stated that "I do not feel overwhelmed,"  and that "although I fell [sic] better now I can still remember palpably the hurt."  (Instrument No. 38-1, at 81-82).  However, Plaintiff also stated "[o]n a daily basis, both on subject matters that are sensitive and also at completely random times, I have episodes of overwheling [sic] emotion.  I feel like I'm falling, I get a tightness in my chest, my heart rate increases, and my thought is kind of overwhelmed."  (Instrument No. 38-1, at 82).  Finally, Plaintiff stated "I am asking the SEPC for patience.  I suffered from something and am doing my

best to deal with things.  I am not one hundred percent... I am currently seeing a private therapist." (Instrument No. 38-1, at 83).

On July 30, 2007, Plaintiff appeared at the SEPC meeting.  (Instrument No. 38-1, at 11). The SEPC committee voted to allow Plaintiff to continue his medical education.  (Instrument No. 38-1, at 11, 134).

In June 2008, Plaintiff received a Marginal Performance grade in his Cardiology elective. (Instrument No. 38-1, at 11).  In response, the SEPC committee again asked Plaintiff to appear at a meeting.  (Instrument No. 38-1, at 12, 134, 136).  On July 17, 2008, Plaintiff appeared before the SEPC committee.  (Instrument No. 38-1, at 12, 134, 136).  Plaintiff doubts that he told the SEPC committee that he was depressed.  (Instrument No. 38-1, at 136).  On July 22, 2008, the SEPC wrote Plaintiff a letter stating that he was dismissed from the Medical School. (Instrument No. 38-1, at 12, 99).  The letter did not specify the grounds for Plaintiff's dismissal. (*See* Instrument No. 38-1, at 99).

On August 4, 2008, following Plaintiff's second dismissal from the Medical School, Plaintiff wrote a letter appealing the dismissal to Dr. Giuseppe N. Colasurdo ("Dr. Colasurdo"), the Dean of the Medical School.  (Instrument No. 38-1, at 105, 106, 109-111, 137).  In the letter, Plaintiff stated "[t]he basis of my appeal is that during the majority of my medical school career I have suffered from undiagnosed depressive disorder and anxiety." (Instrument No. 38-1, at 109).  On September 25, 2008, Dr. Colasurdo met with Plaintiff to discuss his appeal. (Instrument No. 38-1, at 106).  Plaintiff did not bring a diagnosis of depression with him to the meeting.  (Instrument No. 38-1, at 106).

On September 28, 2008, Dr. Colasurdo wrote a letter to Plaintiff stating that in light of his review of Plaintiff's August 4, 2008 appeal letter, the SEPC committee's evaluation, and his

September 25, 2008 meeting with Plaintiff, he had decided to uphold the SEPC decision to dismiss Plaintiff from the Medical School.  (Instrument No. 38-1 at 106, 113).

On October 9, 2008, Plaintiff saw Dr. George D. Santos ("Dr. Santos"), who became Plaintiff's treating physician.   (*See* Instrument No. 38-1, at 121; Instrument 39-2, at 2; Instrument No. 45, at 18).  Dr. Santos diagnosed Plaintiff as suffering from depression.  (*See* Instrument No. 38-1, at 121; Instrument No. 45, at 18).   In Dr. Santos's medical opinion, Plaintiff "first exhibited some symptoms of major depression near the end of his first year and into the second year of medical school."  (Instrument No. 45, at 18).  According to Dr. Santos, "the symptoms of Darin's condition are depressed mood, diminished interest in daily activities, weight loss of about 40 pounds in his second year of medical school, insomnia, and decreased attention and concentration."  (Instrument No. 45, at 18-19).  Dr. Santos also states that "these symptoms did effect memory and negatively impacted the ability to work at medical school clinics and to learn including at medical school classes and to lose interest in both."  (Instrument No. 45, at 19).

On October 10, 2008, Plaintiff emailed Dr. Colasurdo to request a meeting to discuss Dr. Colasurdo's September 28, 2008 letter upholding Plaintiff's dismissal.  (Instrument No. 38-1, at 115).  In the email, Plaintiff stated:

> When I realized, earlier this year, that I suffered from depression, I took the first step in getting control over things...  When looking at the totality of events, it would be hard to conclude that my problems were due to anything other than mental illness.  Do you agree?

(Instrument No. 38-1, at 115).  Plaintiff also stated:

> Second, I have not been given an opportunity to respond to my treatment.  I am
> currently under the care of a psychiatrist and receiving pharmacological
> treatment... I feel like I deserve a chance to demonstrate that I can improve my
> performance.

(Instrument No. 38-1, at 115).

On November 5, 2008, Dr. Colasurdo wrote a letter responding to Plaintiff's email. (Instrument No. 38-1, at 117).  In the letter, Dr. Colasurdo reiterated his decision to uphold the SEPC decision to dismiss Plaintiff.  (Instrument No. 38-1, at 117).  Dr. Colasurdo also stated that the SEPC considered Plaintiff's cumulative record, and cited the Medical School Policies concerning the faculty's obligation "to promote and graduate only those who have demonstrated their suitability for the practice of medicine both in cognitive and noncognitive areas such as clinical ability, interpersonal relations, and personal conduct and professional characteristics." (Instrument No. 38-1, at 117).

Plaintiff continued to see Dr. Santos after his second and final dismissal from Medical School.  (See Instrument No. 45, at 18).  In the Declaration of Dr. Santos, dated October 10, 2010, Dr. Santos states that after diagnosing Plaintiff in October 2008, he "prescribed pharmaceutical and talk therapy and after about a month the symptoms improved significantly." (Instrument No. 45, at 19).  Dr. Santos also states that Plaintiff's symptoms are "continuing to get better" and that "Darin's treatment is coming along well with medications and talk therapy and there has been significant improvement in his condition reducing significantly the symptoms." (Instrument No. 45, at 19).

## C.

On March 11, 2009, Plaintiff filed a Complaint against Defendant UTHSC.  (Instrument No. 1).  Plaintiff made claims against Defendant for breach of contract, mental anguish, and

violating his rights under the U.S. Constitution, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973. (Instrument No. 1, at 5-10). Plaintiff, a former medical student at UTHSC, alleges that by dismissing him from UTHSC, Defendant violated his rights and caused a breach of contract and mental anguish. (Instrument No. 1, at 2-10). Plaintiff seeks costs and attorneys' fees, damages, reinstatement as a medical student at UTHSC, a letter of good standing from UTHSC, expungement of his disciplinary record at UTHSC, the granting of a leave of absence from UTHSC to address mental health issues, a due process hearing from UTHSC on his depression issue, and other and further relief as appears reasonable and just. (Instrument No. 1, at 10-11).

On April 13, 2009, Defendant filed a Motion for Partial Dismissal. (Instrument No. 8). Defendant sought the dismissal of all of Plaintiff's claims except for his Rehabilitation Act claim pursuant to Federal Rule of Civil Procedure 12(b)(1). (Instrument No. 8, at 1-2). On September 4, 2009, the Court granted Defendant's Motion for Partial Dismissal. (Instrument No. 18). The Court dismissed all of Plaintiff's claims except for his Rehabilitation Act claim. (Instrument No. 18).

On August 20, 2010, Defendant filed a Motion for Summary Judgment on Plaintiff's remaining claim under Section 504 of the Rehabilitation Act. (Instrument No. 38). Defendant argues that Plaintiff cannot establish a prima facie case of discrimination under Section 504 of the Rehabilitation Act. (Instrument No. 38, at 18-27). Defendant also argues that UTHSC has articulated a legitimate, nondiscriminatory reason for Plaintiff's dismissal that Plaintiff cannot rebut. (Instrument No. 38, at 27-28).

On October 8, 2010, Plaintiff filed its Response to Defendant's Motion for Summary Judgment. (Instrument No. 43). On October 11, 2010, Plaintiff filed its unopposed Motion for

Leave to Amend its Response to Defendant's Motion for Summary Judgment. (Instrument No. 44). On October 11, 2010, Plaintiff also filed its Amended Response to Defendant's Motion for Summary Judgment. (Instrument No. 44). On October 29, 1010, the Court granted Plaintiff's Motion for Leave to Submit its Amended Response. (Instrument No. 51).

In Plaintiff's Amended Response to Defendant's Motion for Summary Judgment, Plaintiff argues that Plaintiff has provided sufficient evidence to establish a prima facie case of discrimination under Section 504 of the Rehabilitation Act. (Instrument No. 44, at 2-15). Plaintiff attacks the credibility of Defendant's proffered reasons for dismissing Plaintiff. (Instrument No. 44, at 2-15). Plaintiff furthermore argues that Defendant must show that Plaintiff does not have a disability, and that Defendant cannot do so. (Instrument No. 44, at 15-16).

On October 21, 2010, Defendant filed its Reply in Support of Defendant's Motion for Summary Judgment. (Instrument No. 47). Defendant argues that Plaintiff has distorted the factual evidence and cannot establish a prima facie case of discrimination under Section 504 of the Rehabilitation Act. (Instrument No. 47, at 2-8). Defendant also argues that Plaintiff misstates Defendant's burdens of production and persuasion under the applicable *McDonnell Douglas* framework, and that Plaintiff cannot establish that Defendant's proffered reasons for Plaintiff's dismissal are false or unworthy of credence. (Instrument No. 47, at 9).

On October 21, 2010, Defendant filed a Motion to Strike Plaintiff's Summary Judgment Evidence. (Instrument No. 48). Defendant seeks to strike Plaintiff's medical records from Dr. George D. Santos, Plaintiff's treating physician; portions of Dr. Santos's Declaration; a November 3, 2008 letter from Defendant's attorney, Randall L. Kallinen; and portions of Plaintiff's Declaration. (Instrument No. 48, at 4-12). Defendant argues that the evidence which

11

it seeks to strike is inadmissible because it is inauthenticated, hearsay, not supported by personal knowledge, irrelevant, conclusory, or improper lay opinion testimony. (Instrument No. 48, at 4-12).   Plaintiff did not file a response to Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence.

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also U.S. v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *See Anderson*, 477 U.S. at 248.  If the evidence rebutting the motion for summary judgment is only colorable or is not significantly probative, summary judgment should be granted.  *See Id*. at 2511; *see also Thomas v. Barton Lodge, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999).  The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886-88 (1990).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999).

12

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 586-87 (quoting FED. R. CIV. P. 56(e)) (emphasis in original). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1462 (5th Cir. 1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson*, 477 U.S. at 242; *see also Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) (stating that "[t]o avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue."). Further, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgement." *Ragas*, 136 F.3d at 458 (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.

### A.

On October 21, 2010, Defendant filed a Motion to Strike Plaintiff's Summary Judgment Evidence. (Instrument No. 48). Defendant seeks to strike Plaintiff's medical records from Dr. George D. Santos, Plaintiff's treating physician; portions of Dr. Santos's Declaration; a November 3, 2008 letter from Defendant's attorney, Randall L. Kallinen; and portions of

Plaintiff's Declaration.   (Instrument No. 48, at 4-12).   Plaintiff did not file a response to Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence.

1.

A court may consider only admissible evidence on summary judgment.  Fed. R. Civ. P. 56; *Mersch v. City of Dallas*, 207 F.3d 732, 735 (5th Cir. 2000).

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a); *see also United States v. Jimenez-Lopez*, 873 F.2d 769, 772 (5th Cir.1989) (Rule 901 of the Federal Rules of Evidence requires only that there is sufficient evidence to support a  support a finding that the evidence in question is what its proponent claims it to be.).   Rule 901 further provides:

> (b)   By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> (1)   Testimony of witness with knowledge.  Testimony that a matter is what it is claimed to be.

Fed. R. Evid. 901(b).

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by the Rules of Evidence for United States Courts and Magistrates, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Fed. R. Evid. 402.   "Relevant evidence" means evidence having any tendency to make the

14

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.

Federal Rule of Civil Procedure 56(e) requires that an affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated..."  Fed. R. Civ. P. 56(e).  Factual averments in an affidavit cannot be based on mere information and belief.  Speculative assertions based on mere information and belief, and not based on personal knowledge, are not competent summary judgment evidence.  *See id.*  "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possess that knowledge."  *Gonzalez v. Southwestern Bell Yellow Pages, Inc.*, No. 3: 05-CV-383-L, 2007 WL 900768, at *11 (N.D.Tex. Mar. 26, 2007) (citing *Thomas v. Atmos Energy Corp.*, No. 06-30514, 2007 WL 866709, at *4 (5th Cir. Mar. 21, 2007)).  The Fifth Circuit has stated that unsupported allegations or affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgment.  *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

Because Rule 56(e) requires that affidavits must set out facts that would be admissible in evidence, statements that are hearsay would typically not be proper summary judgment evidence.  *See* Fed. R. Evid. 802.  "'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Whether an out-of-court statement is hearsay depends on whether it is offered for its truth or merely for the fact that it was made.  *United States v.*

15

*Webster*, 649 F.2d 346, 349 (5th Cir. 1981).   The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence.   *Anderson v. U.S.*, 417 U.S. 211, 220 (1974).   For hearsay within hearsay to be admissible, each part of the combined statement must conform to an exception to the hearsay rule.   Fed. R. Evid. 805.

If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702, which governs testimony by experts.   Fed. R. Evid. 701.

When a party makes a motion objecting to evidence, Federal Rule of Civil Procedure 7(b)(1)(B) provides that the motion must "state with particularity the grounds for seeking the order."   Fed. R. Civ. P. 7(b)(1)(B).   Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken.   *See United States v. Avants,* 367 F.3d 433, 445 (5th Cir.2004).   Objections lacking specificity do not satisfy the requirements of Rule 103.   *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir.1998).   "A loosely formulated and imprecise objection will not preserve error. Rather, a trial court judge must be fully apprised of the grounds of an objection."   *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998)*.* (citations omitted).   However, even when a specific objection has

not been made, Rule 103 does not preclude the court from finding that plainly inadmissible evidence is inadmissible. *See* Federal Rule of Evidence 103(d).

2.

a.

First, the Court will address Defendant's objection to seven pages of medical records from Dr. George D. Santos ("Dr. Santos"), Plaintiff's treating physician. (Instrument No. 46, at 10-16; Instrument No. 48, at 4). Defendant argues that the medical records are inadmissible because they are unauthenticated. (Instrument No. 48, at 4). According to Defendant, the medical records are unauthenticated because they are unsworn documents which have not been attached to an affidavit. (Instrument No. 48, at 4).

The Court first notes that Defendant has already submitted the identical seven pages of Dr. Santos's medical records in support of Defendant's Summary Judgment Motion. (*See* Instrument No. 39-2). In Defendant's submission, Dr. Santos's medical records are attached to the affidavit of Jamie Featherston, the custodian of records for Dr. Santos. (Instrument No. 39-2, at 2).

Rule 901 of the Federal Rules of Evidence requires only that there is sufficient evidence to support a  support a finding that the evidence in question is what its proponent claims it to be. *See United States v. Jimenez-Lopez*, 873 F.2d 769, 772 (5th Cir.1989). Pursuant to Rule 901, the Court may consider testimony from a witness with knowledge that a matter is what it is claimed to be. *See* Fed. R. Evid. 901 (b)(1). Accordingly, the Court finds that Dr. Santos's medical records are authenticated.

17

Defendant also argues that the medical records are inadmissible because they are hearsay, and contain inadmissible double hearsay.  According to Defendant, Dr. Santos's statements in the medical records are hearsay, and Dr. Santos's statements about Plaintiff's statements to him are double hearsay.  (Instrument No. 48, at 4).  Defendant argues that all of these statements are inadmissible to the extent that they are being offered to prove the truth of the matter asserted. (Instrument No. 48, at 4).

Although Defendant has identified legal grounds for its objections, within the seven pages of medical records, Defendant has not identified any particular statements as the statements targeted by Defendant's objections.  The Court denies Defendant's objections to Dr. Santos's medical records because Defendant's objections do not meet the specificity requirement of Rule 103(a)(1).  *See United States v. Avants,* 367 F.3d 433, 445 (5th Cir.2004) (Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken).  Even so, the Court will not consider any evidence that is plainly inadmissible. *See* Federal Rule of Evidence 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.").

For the above reasons, the Court DENIES Defendant's Motion to Strike (Instrument No. 48, at 4) with respect to the medical records from Dr. Santos (Instrument No. 46, at 10-16).

**b.    Portions of Dr. Santos's Declaration**

Second, the Court will address Defendant's objections to portions of the Declaration of

Dr. George D. Santos, Plaintiff's treating physician. (Instrument No. 45, at 18-19). Defendant

objects to the following statements of Dr. Santos:

> "Darin first exhibited some symptoms of major depression near the end of his
> first year and into the second year of medical school."

> "The symptoms of Darin's condition are ... weight loss of about 40 pounds in his
> second year of medical school."

> "Darin was depressed and uncomfortable with the need for help."

> "Obviously, these symptoms did effect memory and negatively impacted the
> ability to work at medical school clinics and to learn including at medical school
> classes and to lose interest in both."

(*See* Instrument No. 48, at 5; Instrument No. 45, at 18-19). Defendant argues that the above

statements fail to meet the requirements of Federal Rule of Civil Procedure 56(e), because Dr.

Santos has not demonstrated personal knowledge of the information contained in the statements.

Defendant argues that Dr. Santos cannot have personal knowledge because the above statements

refer to Plaintiff's time at UTHSC, but Dr. Santos first saw Plaintiff in October 2008, after

Plaintiff had been dismissed from UTHSC on September 28, 2008. (Instrument No. 48, at 5; *see*

*also* Instrument No. 45, at 18; Instrument No. 38-1, at 113). Defendant also points out that Dr.

Santos does not state that he reviewed any admissible documents which might provide the basis

for knowledge of the information in the above statements. (Instrument No. 48, at 5).

Although the timing of Dr. Santos's treatment of Plaintiff's occurred after Plaintiff's

dismissal from UTHSC, this does not preclude Dr. Santos from providing his opinion about

Plaintiff's prior condition and symptoms.  *See Kim v. Time Ins. Co.*, 267 F.R.D. 499 , 503 (S.D.Tex. 2008) (The scope of testimony for a treating physician may include the physician's opinion concerning a patient's prior symptoms when the opinion is formed in the course of and for the purpose of the treatment and care of the patient.).  In Dr. Santos's Declaration, Dr. Santos states his "medical opinion that Darin suffers from Major Depressive Disorder."  (Instrument No. 45, at 18.).  It is reasonable to infer that Dr. Santos has learned enough from his personal treatment of Plaintiff to provide the basis for a medical opinion about Plaintiff's condition at the time he saw Plaintiff, as well as Plaintiff's prior condition and symptoms.  The Court finds that Dr. Santos's above statements have sufficient support to meet the requirements of Federal Rule of Civil Procedure 56(e). *See* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated..").

Defendant also objects to the following statements of Dr. Santos:

"Darin first exhibited some symptoms of major depression near the end of his first year and into the second year of medical school."

"The symptoms of Darin's condition are ... weight loss of about 40 pounds in his second year of medical school."

"Darin was depressed and uncomfortable with the need for help."

(Instrument No. 48, at 6; Instrument No. 45, at 18-19).  Defendant argues that these statements are inadmissible hearsay, because they are based on Plaintiff's statements about Plaintiff's diagnosis, and are being offered for the truth of the matter asserted.  (Instrument No. 48, at 6).

Here, Defendant assumes that Dr. Santos is merely restating a diagnosis told to him by Plaintiff.  However, as the Court discussed above, Dr. Santos could have learned enough from his treatment of Plaintiff to form his own medical opinion about Plaintiff's prior condition and symptoms.  Although Plaintiff clearly made statements to Dr. Santos during his visits to Dr. Santos, it is reasonable to infer that Dr. Santos's statements do not restate Plaintiff's statements but instead express Dr. Santos's medical opinion.  Accordingly, the Court finds that Dr. Santos's above statements are not inadmissible hearsay.  *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

In addition, Defendant objects to Dr. Santos's statements concerning his diagnosis of Plaintiff as suffering from Major Depressive Disorder.  (Instrument No. 48, at 7; Instrument No. 45, at 18).  Defendant argues that Dr. Santos's diagnosis is irrelevant because it was made after Plaintiff was no longer a student at UTHSC.  (Instrument No. 48, at 7).  Defendant cites several cases in support of its argument.  Defendant first cites *Gazda v. Pioneer Chlor Alkali Co., Inc.*, 10 F. Supp. 2d 656, 671 n.36 (S.D. Tex. 1997).  In *Gazda*, the plaintiff submitted an affidavit from a psychologist who indicated that the plaintiff suffered from depression during the period that the psychologist saw the plaintiff, but did not provide any opinion as to whether plaintiff suffered during from depression during the period at issue in the lawsuit.  *Gazda*, 10 F.Supp. 2d at 671.  The court found that the affidavit was not probative of the plaintiff's condition during the period at issue in the lawsuit, which was while she was employed and at the time she was discharged.  *Gazda*, 10 F.Supp. 2d at 671.  Defendant also cites *Smith v. Astrue*, 2010 WL

1418420, at *4 (M.D. La. Mar. 02, 2010).  (Instrument No. 48, at 7).  In *Smith*, the plaintiff submitted a statement from a doctor who offered his opinion that the plaintiff was unable to work at the time that the doctor saw her.  *Smith*, 2010 WL 1418420, at *4.  The doctor did not address the plaintiff's condition during the time at issue in the lawsuit, which was the time of her disability application, or the time of her last insured dated.  *Smith*, 2010 WL 1418420, at *4. The court found that the doctor's statement was not material to the outcome of the plaintiff's case because it did not address the time period at issue.  *Smith*, 2010 WL 1418420, at *4. Finally, Defendant cites *Mammarelli v. Astrue*, 2008 WL 5119654, at *4 (N.D.Tex. Dec. 03, 2008).   In *Mammarelli*, the plaintiff submitted a form about his health from his treating physician. *Mammarelli,* 2008 WL 5119654, at *4.   The form consisted of a checklist and was dated after an administrative law judge had issued a decision on the plaintiff's disability case. *Mammarelli,* 2008 WL 5119654, at *4.  The court found that the form was an isolated medical statement which was unsupported and which would not have changed the outcome of the administrative law judge's decision. *Mammarelli,* 2008 WL 5119654, at *4.

In none of Defendant's cited cases does the doctor address the patient's health prior to the time that the doctor saw the patient.  Here, by contrast, Dr. Santos has provided an opinion concerning Plaintiff's health during the time at issue, which was while Plaintiff was still a medical student.  (*See* Instrument No. 45, at 18).  Defendant's cited cases therefore do not apply. Furthermore, since Plaintiff must establish that he was a disabled individual under the Rehabilitation Act while he was a student at UTHSC, it is a material issue whether Plaintiff was depressed during that time period. *See Kurth v. Gonzales*, 472 F.Supp. 2d 874, 878-880 (E.D.

Tex. 2007). Accordingly, the Court finds that Dr. Santos's statements concerning his diagnosis of Plaintiff as suffering from Major Depressive Disorder are relevant. *See* Fed. R. Evid. 401 ("Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.).

Finally, Defendant objects to Dr. Santos's statements about Plaintiff's symptoms and the effects of Plaintiff's symptoms prior to the time that Dr. Santos saw Plaintiff. (Instrument No. 48, at 7). Defendant specifically objects to Dr. Santos's statement that Plaintiff's "symptoms did effect memory and negatively impacted the ability to work including at medical school clinics and to learn including at medical school classes." (Instrument No. 48, at 7; Instrument No. 45, at 19). Defendant argues that this statement and other such statements are conclusory allegations not supported by any specific facts. (Instrument No. 48, at 7-8).

In Dr. Santos's Declaration, although Dr. Santos does not clearly identify which of Plaintiff's alleged symptoms occured prior to his treatment of Plaintiff, and which of Plaintiff's symptoms he directly observed, Dr. Santos states that "the symptoms of Darin's condition are depressed mood, diminished interest in daily activities, weight loss of about 40 pounds in his second year of medical school, insomnia, and decreased attention and concentration." (Instrument No. 45, at 18-19). It is reasonable to infer that at least Dr. Santos observed at least some of these symptoms during his treatment of Plaintiff, since Dr. Santos started the list of symptoms with "are" rather than "were". It is also reasonable to infer that at least some of the symptoms listed by Dr. Santos, such as decreased attention and concentration, may have affected

Plaintiff's memory and the ability to perform clininical work and classwork.  Furthermore, as the Court noted above, as Plaintiff's treating physician, Dr. Santos is not precluded from offering his opinion of Plaintiff's symptoms prior to his treatment of Plaintiff.  *See Kim v. Time Ins. Co.*, 267 F.R.D. 499 , 503 (S.D.Tex. 2008).  Although Dr. Santos could certainly have provided more detailed support for his statement that Plaintiff's "symptoms did effect memory and negatively impacted the ability to work including at medical school clinics and to learn including at medical school classes," this statement about Plaintiff's symptoms nonetheless is supported by his list of Plaintiff's symptoms, as well as the fact that he is Plaintiff's treating physician.  Accordingly, the Court finds that Dr. Santos's statement that Plaintiff's "symptoms did effect memory and negatively impacted the ability to work including at medical school clinics and to learn including at medical school classes," is not conclusory.  *See Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (Unsupported allegations or affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgment.).

Since Defendant has not specifically identified any additional statements of Dr. Santos about Plaintiff's symptoms and their effects as the targets of Defendant's objections, the Court denies those objections because they do not meet the specificity requirement of Rule 103(a)(1). *See United States v. Avants,* 367 F.3d 433, 445 (5th Cir.2004) (Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken).  Even so, the Court will not consider any of the evidence that is

plainly inadmissible. *See* Federal Rule of Evidence 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of thet court.").

For the above reasons, the Court DENIES Defendant's Motion to Strike (Instrument No. 48, at 4-8) with respect to the Declaration of Dr. Santos (Instrument No. 45, at 18-19).

c.

Third, the Court will address Defendant's objections to the November 3, 2008 letter of Plaintiff's counsel, Randal L. Kallinen.  (Instrument No. 48, at 8-9).  Defendant objects to the letter and its attachments.  (Instrument No. 48, at 8-9).

The Court did not consider or rely upon this letter or its attachments in its determination of Defendant's Motion for Summary Judgment.  Accordingly, the Court DENIES as moot Defendant's Motion to Strike (Instrument No. 48, at 9-10) with respect to the November 3, 2008 letter of Plaintiff's counsel and its attachments (Instrument No. 46, at 23-32).  *See Jones v. United Parcel Service, Inc.*, No. 3:06-cv-1535-L, 2008 WL 2627675 at *6 (N.D. Tex. June 30, 2008) (denying as moot the plaintiff's objections and motion to strike summary judgment evidence where the court determined that the evidence was "not central to the court's conclusions, and sustaining the parties' objections would not change the result.").  *See also, Hansen v. Aon Risk Services of Texas*, 473 F.Supp.2d 743, 754 (S.D. Tex. 2007).

d.

Fourth, the Court will address Defendant's objections to Plaintiff's Declaration. Defendant objects to the following statements on the ground that they are improper lay opinion testimony:

"It is clear that I suffer from major depressive disorder and that I developed the condition in Fall of 2004."

"The [DSMIV], published by the American Pyschiatric Association, provides nine criteria that establish the diagnosis, five of which must be present over a two week period."

"My major depression effected my ability to work at the medical school clinics and to learn for medical school..."

"Sometime in 2006, subsequent to the mistaken psychiatric review performed by Dr. Axelrad..."

"I clearly possessed a very specific knowledge of this disease, as I was trained to make exactly such a diagnosis."

"I have been shown more than than adequate ability to function as a physician."

"I was not speaking as much as an individual, but rather as a physician talking to another physician."

"But for reasons of mental illness, I was unable to deal with the fact of being 'off cycle.'"

"All examples given by the University for my dismissal was a symptom of my illness."

"I was also suffering from depression at the time and one symptom of my major depression is having problems in interpersonal relationships which I believe caused the misunderstandings."

(Instrument No. 48, at 10-11; Instrument No. 46, at 44-48).

Defendant also objects to the following statements on the ground that they are

conclusory:

"It is clear that I suffer from major depressive disorder and that I developed the
condition in Fall of 2004."

"My major depression effected my ability to work at the medical school clinics
and to learn for medical school resulting in my marginal performance in
Cardiology, and my problems in Physical Diagnosis and Medicine."

"It was clear she [Dr. McNeese] believed that I was suffering from a psychiatric
illness."

"My grades suffered due to my depression."

"It is stated by the University that I was dismissed in part for academic reasons.
The evidence of my poor performance is an assignment that was not completed
and a one 'marginal performance.'"

"I believe it is unlikely the University has ever dismissed a student for academic
reasons where they could not produce even a single example of the student's work
that received a failing grade."

"I failed to submit my Physical Diagnosis assignment due directly to my illness."

"If one 'marginal performance' and one 'fail' grade are reasons for dismissal, then
it is likely that a near majority of medical students admitted to UT-Houston will
need to be dismissed."

"Indeed, students graduate every year who did in fact fail four classes in a twelve
month period, and who failed their USMLE Step 1."

"A reasonable person would not conclude that I am not otherwise qualified in the
absence of even a single piece of work that received a failing grade."

"An accomodation would have meant an offer of medical treatment."

"All examples given by the University for my dismissal was a symptom of my
illness."

"Since my dismissal was not for academic reasons, despite the claims of the University, it was solely due to reasons of personal behavior due to major depression."

(Instrument No. 48, at 11-12; Instrument No. 46, at 44-48).

As the Court's below reasoning will show, the Court did not consider or rely upon the above statements in its determination of Defendant's Motion for Summary Judgment. Accordingly, the Court DENIES as moot Defendant's Motion to Strike (Instrument No. 48, at 9-10) with respect to the above statements from Plaintiff's Declaration (Instrument No. 46, at 44-48). *See Jones v. United Parcel Service, Inc.*, No. 3:06-cv-1535-L, 2008 WL 2627675 at *6 (N.D. Tex. June 30, 2008) (denying as moot the plaintiff's objections and motion to strike summary judgment evidence where the court determined that the evidence was "not central to the court's conclusions, and sustaining the parties' objections would not change the result."). *See also*, *Hansen v. Aon Risk Services of Texas*, 473 F.Supp.2d 743, 754 (S.D. Tex. 2007).

For the above reasons, the Court **DENIES** Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence. **(Instrument No. 48).**

### B.

On August 20, 2010, Defendant filed a Motion for Summary Judgment on Plaintiff's claim under Section 504 of the Rehabilitation Act. (Instrument No. 38). Defendant argues that Plaintiff cannot establish a prima facie case of discrimination under Section 504 of the Rehabilitation Act. (Instrument No. 38, at 18-27). Defendant also argues that UTHSC has articulated a legitimate, nondiscriminatory reason for Plaintiff's dismissal that Plaintiff cannot rebut. (Instrument No. 38, at 27-28). In Defendant's Reply in Support of Defendant's Motion

for Summary Judgment, Defendant further argues that Plaintiff misstates Defendant's burdens of production and persuasion under the applicable *McDonnell Douglas* framework. (Instrument No. 47, at 9).

On October 11, 2010, Plaintiff filed its Amended Response to Defendant's Motion for Summary Judgment. (Instrument No. 44). Plaintiff argues that Plaintiff has provided sufficient evidence to establish a prima facie case of discrimination under Section 504 of the Rehabilitation Act. (Instrument No. 44, at 2-15). Plaintiff attacks the credibility of Defendant's proffered reasons for dismissing Plaintiff. (Instrument No. 44, at 2-15). Plaintiff furthermore argues that Defendant must show that Plaintiff does not have a disability, and that Defendant cannot do so. (Instrument No. 44, at 15-16).

Section 504 of the Rehabilitation Act of 1973 provides that:

> [n]o otherwise qualified individual with handicaps ... shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity[, including those operated by a college, university, or other postsecondary institution, or a public system of higher education,] receiving Federal financial assistance.

29 U.S.C. § 794.

The *McDonnell Douglas* burden-shifting analysis applies to claims brought under the Rehabilitation Act. *See Handy v. Brownlee*, 118 Fed.Appx. 850, 854 & n.3 (5th Cir. 2004). Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *See Handy*, 118 Fed. Appx. at 854. If a *prima facie case* is established, the burden then shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the action that adversely affected the plaintiff. *See Handy*, 118 Fed. Appx. at 854; *Kurth v.*

*Gonzales*, 472 F.Supp.2d 874, 878 (E.D. Tex. 2007). If the defendant offers such reason, the burden then shifts back to the plaintiff to show evidence that the proffered explanation is only a pretext. *Handy*, 118 Fed. Appx. at 854; *Kurth*, 472 F.Supp.2d at 878.

1.

In order to establish a *prima facie* case of discrimination under the Rehabilitation Act, Plaintiff must show that he: (1) is an individual with a disability; (2) was otherwise qualified to perform the duties of his position; (3) was being excluded from participation in, or being denied benefits of a federally funded school, service, program, or activity, or was otherwise being discriminated against by Defendant; and (4) that such exclusion, denial of benefits, or discrimination was solely because of his disability. *See Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997); *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993), *Soledad v. U.S. Dep't. of Treasury*, 304 F.3d 500, 504-505 (5th Cir. 2002).

The Parties dispute whether Plaintiff can establish the first, second, and fourth prongs of Plaintiff's *prima facie* case. With respect to the third prong, the Parties do not dispute that Defendant UTHSC is a federally funded school for the purposes of the Rehabilitation Act, or that Plaintiff's dismissal resulted in Plaintiff's exclusion from the benefits of participating in Medical School at UTHSC. (*See* Instrument No. 1, at 2, 10; Instrument No. 20, at 2; Instrument No. 38, at 27-28).

a.

Plaintiff must first establish that he is an individual with a disability under the Rehabilitation Act. *See Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir.

30

1997); *Soledad v. U.S. Dep't. of Treasury*, 304 F.3d 500, 504-505 (5th Cir. 2002). Under the Rehabilitation Act, an individual with a disability is a person who (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 29 U.S.C. § 705 (9)(B); 42 U.S.C. § 12102 (1); *Hileman v. City of Dallas, Tex.* 115 F.3d 352 (5th Cir. 1997). "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2 (i). The following factors should be considered in determining whether an individual is substantially limited in a major life activity:

      (i)      The nature and severity of the impairment;

      (ii)     The duration or expected duration of the impairment; and

      (iii)    The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2 (J)(2)(i)-(iii).

During Plaintiff's time in Medical School, Plaintiff had some difficulty getting along with others. For example, during Plaintiff's first year of Medical School, a female student alleged that Plaintiff harassed her, and a Hispanic student was offended by an article written by Plaintiff. (Instrument No. 38-1, at 4, 7-8, 122-123). During Plaintiff's third year of Medical School, Plaintiff also attempted to take an exam in a third-year course one month early although he did not have permission to do so. (Instrument No. 38-1, at 11, 33).

Throughout Plaintiff's time in Medical School, Plaintiff's statements to others suggest that Plaintiff believes that his problems getting along with others stemmed from his depression.

31

During Plaintiff's first year of Medical School, Plaintiff met with Dr. McNeese to resolve the incidents with the female student and the Hispanic student. (Instrument No. 38-1, at 4, 7-8, 122-123).   At some point after these meetings, Plaintiff told Dr. McNeese that he was sick and suffering from acute depressive disorder. (*See* Instrument No. 38-1, at 124).   Between Plaintiff's second and third years of Medical School, Plaintiff was dismissed by the SEPC committee after failing Physical Diagnosis, a required second-year course.   (Instrument No. 38-1, at 125; Instrument No. 46, at 20-21). After this dismissal, Plaintiff wrote an appeal letter to Dr. Wolinsky stating that he wanted to learn how to solve problems "in a cooperative manner" in the face of his personal stresses. (Instrument No. 38-1, at 73).   Plaintiff's appeal was successful, and he was reinstated as a medical student.   (Instrument No. 38-1, at 11, 79).   However, during Plaintiff's third year of Medical School, Plaintiff attempted to take an exam in a third-year course one month early.   (Instrument No. 38-1, at 11, 33).   Plaintiff then wrote a letter to the SEPC committee stating that during his second year of Medical School he had felt hopeless, hurt and overwhelmed, and that he had cut himself off from friends.  (Instrument No. 38-1, at 81-82). Plaintiff also wrote that he still sometimes felt overwhelmed, was not one hundred percent, and was doing his best to deal with things.  (Instrument No. 38-1, at 82-83).  At the end of Plaintiff's third year, Plaintiff was dismissed from the Medical School by the SEPC committee for a second time after earning a marginal performance in his third-year Cardiology elective.  (Instrument No. 38-1, at 109).  After Plaintiff's second dismissal, Plaintiff wrote Dr. Colasurdo an appeal letter stating that "during the majority of my medical school career, I have suffered from undiagnosed depressive disorder and anxiety." (Instrument No. 38-1, at 109).  After Dr. Colasurdo upheld the

dismissal, Plaintiff wrote Dr. Colasurdo an email which asked, "When looking at the totality of events, it would be hard to conclude that my problems were due to anything other than mental illness. Do you agree?" (Instrument No. 38-1, at 115).

During Plaintiff's time in Medical School, Plaintiff also earned one failing grade and one marginal performance. As mentioned above, at the end of Plaintiff's second year of Medical School, Plaintiff failed Physical Diagnosis, a required second-year course. (Instrument No. 38-1, at 125; Instrument No. 46, at 20-21). Plaintiff was dismissed by the SEPC committee, but successfully appealed the dismissal, and was reinstated to the Medical School. (Instrument No. 38-1, at 11, 79). Plaintiff passed Physical Diagnosis on his second attempt. (Instrument No. 38-1, at 11). In addition, as mentioned above, at the end of Plaintiff's third year, Plaintiff received a marginal performance in Cardiology. (Instrument No. 38-1, at 11, 12, 99).

Plaintiff's statements to others suggest that Plaintiff believes that his poor grades in Physical Diagnosis and Cardiology resulted from his depression. At the end of Plaintiff's second year of Medical School, after Plaintiff had failed Physical Diagnosis, Plaintiff told the SEPC committee that he was stressed, and that he didn't like to check his grades because he had become depressed when he found he wasn't doing well. (Instrument No. 46, at 20-21). As mentioned above, after the SEPC committee dismissed him, Plaintiff then wrote an appeal letter to Dr. Wolinsky stating that during his second year of Medical School he had felt hopeless, hurt and overwhelmed, and that he had cut himself off from friends. (Instrument No. 38-1, at 81-82). In addition, as mentioned above, at the end of Plaintiff's third year Plaintiff received a marginal performance in Cardiology and was dismissed by the SEPC committee for a second time.

33

(Instrument No. 38-1, at 11, 12, 99).  Plaintiff then wrote Dr. Colasurdo an appeal letter stating that "during the majority of my medical school career, I have suffered from undiagnosed depressive disorder and anxiety."  (Instrument No. 38-1, at 109).  Plaintiff also wrote Dr. Colasurdo an email which asked, "When looking at the totality of events, it would be hard to conclude that my problems were due to anything other than mental illness.  Do you agree?" (Instrument No. 38-1, at 115).

In addition to Plaintiff's statements, Plaintiff also provides the Declaration of Dr. Santos, Plaintiff's treating physician, in support of Plaintiff's argument that his depression affected his grades.  (*See* Instrument No. 44, at 2, 7, 14-16; Instrument No. 45, at 18-19).  In his Declaration, Dr. Santos states that Plaintiff "first exhibited some symptoms of major depression near the end of his first year and into the second year of medical school."  (Instrument No. 45, at 18).  Dr. Santos also states that the symptoms of Plaintiff's depression "are... decreased attention and concentration...[o]bviously, these symptoms did effect memory and negatively impacted the ability to work including at medical school clinics and to learn including at medical school classes and to lose interest in both."  (Instrument No. 45, at 18-19).

The Court will first consider Plaintiff's depression with respect to his ability to get along with others.  Pursuant to Section 1630.2 of Title 29 of the Code of Federal Regulations, getting along with others does not constitute a major life activity.  *See* 29 C.F.R. § 1630.2 (i) ("Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.").  Furthermore, Plaintiff's statements fail to explain how Plaintiff's problems getting along with others may have affected a

major life activity.  Finally, although Dr. Santos, Plaintiff's treating physician, has identified "decreased attention and concentration," effects on "memory," and "the ability to work at medical school clinics and to learn including at medical school classes," as symptoms of Plaintiff's depression, Dr. Santos has not identified any problems concerning Plaintiff's ability to get along with others as symptoms of Plaintiff's depression.  (*See* Instrument No. 45, at 18-19).  Because Plaintiff has not provided  any details showing that his problems relating to others affected a major life activity, or any medical evidence showing that his problems relating to others resulted from his depression, the Court finds that Plaintiff's problems relating to others cannot be the basis for a finding of disability.

The Court will next consider Plaintiff's depression with respect to his grades.  Here, Plaintiff completed nearly three years of Medical School coursework successfully.  Although Plaintiff initially failed his second-year requirement of Physical Diagnosis, he later passed Physical Diagnosis.  (Instrument No. 38-1, at 11, 123).  In Plaintiff's third-year coursework, other than his marginal performance in Cardiology in June of 2008, Plaintiff did not earn any other marginal or failing grades.  (*See* Instrument No. 44, at 6-7, 16).  Plaintiff's grades over three years of coursework were not poor enough to show any severe or long-term limitations from his depression.  *See* 29 C.F.R. § 1630.2 (J)(2)(i)-(iii).  (In determining whether an individual is "substantially limited in a major life activity," the court should consider factors including the nature and severity of the impairment, the duration of the impairment, and the permanent or long term impacts of the impairment.).  Although Plaintiff argues that his

depression substantially limited the major life activities of learning and working (*see* Instrument No. 44, at 16), Plaintiff's grades do not reflect a substantial limitation.

Taking into account Plaintiff's interpersonal and academic difficulties during Medical School, the Court finds that Plaintiff has not shown that his depression was an impairment that substantially limited one or more of his major life activities. Accordingly, the Court finds that Plaintiff has not established that he was an individual with a disability under the Rehabilitation Act.

b.

Plaintiff must also establish that he was otherwise qualified for his position as a medical student at UTHSC. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993), *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 854 (5th Cir. 1993). In order to show that he was otherwise qualified, Plaintiff must show that he was capable of satisfying the Medical School's academic and technical requirements with the aid of reasonable accomodations. *See McGregor*, 3 F.3d at 855. However, the accommodation provisions of the Rehabilitation Act do not require public entities to guess an individual's need for an accommodation. *McCoy v. Tex. Dep't of Crim. Justice*, C.A. No. C-05-370, 2006 WL 2331055 at *7 (S.D. Tex. Aug. 09, 2006). Furthermore, an individual is entitled to a requested accommodation only if he can demonstrate that the accommodation is reasonable and does not sacrifice the integrity of an institution's program. *McGregor*, 3 F.3d at 858-859. Absent evidence of discriminatory intent or disparate impact, the Court must accord reasonable deference to the Medical School's decisions. *McGregor*, 3 F.3d at 859; *see also Anderson v.*

36

*Univ. of Wis.*, 841 F.2d 737, 741 (7th Cir. 1988) ("The [Rehabilitation] Act does not designate a jury, rather than the faculty... as the body to decide whether a would-be student is up to snuff. [...] [J]urors unacquainted with the academic program ... could not make the readmissions decision more accurately than the faculty...").

Plaintiff argues that even without accommodations, he was otherwise qualified for his position as a medical student at UTHSC. (*See* Instrument No. 44, at 6-7, 16). Plaintiff also argues that the Medical School should have been aware of his depression and tried to accomodate it before dismissing him, and that he would have improved his performance as a student if he had been given the accommodation of the chance to respond to treatment for his depression. (Instrument No. 44, at 15). Finally, Plaintiff argues that that the Medical School's actions show that he was discriminated against. (Instrument No. 44, at 5-10, 14-15).

With respect to Plaintiff's first argument, Plaintiff argues that he was qualified to be a medical student at UTHSC because other than receiving one marginal performance in his third-year Cardiology elective, he had passed all of his other classes. (Instrument No. 44, at 6-7, 16). Plaintiff argues that under the Medical School Policies, his marginal performance in Cardiology was not sufficient grounds for the SEPC committee to dismiss him. (Instrument No. 44, at 6-7, 16). However, the Medical School Policies direct the SEPC committee to evaluate Plaintiff's interpersonal relations and personal and professional characteristics in addition to Plaintiff's grades. (Instrument No. 38-1, at 21). Thus, under the Medical School Policies, the SEPC's evaluation of whether Plaintiff should be dismissed could include Plaintiff's difficulties relating to others, such as Plaintiff's third-year attempt to take an exam early without permission, and

Plaintiff's first-year incidents with the female student who complained of harassment and the Hispanic student who was offended by Plaintiff's article.

Here, the SEPC committee decided to dismiss Plaintiff for a second and final time in July 2008, at the end of Plaintiff's third year of coursework. (Instrument No. 38-1, at 12, 99). By that time, the SEPC committee had discussed Plaintiff's third-year marginal performance in Cardiology and Plaintiff's second-year failing grade in Physical Diagnosis, as well as Plaintiff's third-year attempt to take an exam early without permission, and Plaintiff's first-year incidents with the female student who complained of harassment and the Hispanic student who was offended by Plaintiff's article. (*See* Instrument No. 38-1, at 9, 11, 133; Instrument No. 46, at 19). Plaintiff appealed his second dismissal by writing to Dr. Colasurdo, but was denied. (Instrument No. 38-1, at 117). Dr. Colasurdo's denial letter does not provide any specific grounds for upholding Plaintiff's dismissal. (*See* Instrument No. 38-1, at 117). However, Dr. Colasurdo makes clear that the SEPC committee had evaluated Plaintiff's qualifications to be a medical student based upon more than just Plaintiff's grades. For example, Dr. Colasurdo stated that the SEPC considered Plaintiff's cumulative record, and quoted the Medical School Policies concerning the faculty's obligation "to promote and graduate only those who have demonstrated their suitability for the practice of medicine both in cognitive and noncognitive areas such as clinical ability, interpersonal relations, and personal conduct and professional characteristics." (Instrument No. 38-1, at 117). In light of Plaintiff's grades and interpersonal difficulties, and in light of the fact that the Medical School Policies direct the SEPC committee to evaluate

suitability for the practice of medicine in both cognitive and noncognitive areas, the Court finds that the SEPC committee had sufficient grounds to dismiss Plaintiff.

With respect to Plaintiff's arguments concerning accommodations, Plaintiff first argues that the Medical School should have known that he was depressed and in need of an accommodation, based upon his statements to Dr. McNeese and the SEPC committee. (Instrument No. 44, at 5). For example, after Plaintiff's first-year incidents with the female student who alleged that he harassed her, and the Hispanic student who was offended by his article, Plaintiff told Dr. McNeese that he was sick and suffering from acute depressive disorder. (Instrument No. 38-1, at 8, 124). In addition, in July 2006, between Plaintiff's second and third year of Medical School, Plaintiff appeared before the SEPC committee after failing Physical Diagnosis. (Instrument No. 38-1, at 125; Instrument No. 46, at 19). Plaintiff told the SEPC committee that he was stressed and became depressed when he looked at his grades. (Insturment No. 46, at 20-21). Plaintiff also asked the SEPC committee whether counseling would be an option for him. (Instrument No. 46, at 21). The SEPC committee meeting notes also show that Dr. Yetman of the SEPC committee wondered whether Plaintiff was depressed and whether the situation could be remediated through counseling. (Instrument No. 44, at 5). During Plaintiff's third year of coursework, Plaintiff was asked to appear before the SEPC committee for a second time because Plaintiff had attempted to take an exam early without permission. (Instrument No. 38-1, at 11, 133). In June 2007, prior to appearing before the SEPC committee, Plaintiff wrote the SEPC committee a letter stating that during his second year of medical school he had felt hopeless, hurt and overwhelmed. (Instrument No. 38-1, at 81). Plaintiff also wrote that he still

felt overwhelmed sometimes, was not one hundred percent, and was seeing a private therapist. (Instrument No. 38-1, at 83).

However, Plaintiff's argument that his statements to Dr. McNeese and the SEPC committee show that he was depressed and in need of accommodation overlooks two important facts. First, although the SEPC committee may have suspected that Plaintiff was depressed in July 2006 (*see* Instrument No. 44, at 5; Instrument No. 46, at 21; Instrument No. 38-1, at 124-125), that suspicion was contradicted in October 2006, after Dr. Axelrad had conducted his psychiatric evaluation of Plaintiff and found that he was not suffering from any significant pyschiatric disorder or impairment (Instrument No. 39-1, at 17). Second, despite Plaintiff's later letters and complaints, he did not have a diagnosis of depression until after his dismissal, in October 2008. (*See* Instrument No. 38-1, at 121). Contrary to Plaintiff's argument that the Medical School should have known that he was depressed and in need of accomodation, the Medical School was not required to guess that Plaintiff was depressed when a psychiatric evaluation showed that he was not depressed, and when Plaintiff was not diagnosed as depressed until after his dismissal. *See McCoy v. Tex. Dep't of Crim. Justice*, C.A. No. C-05-370, 2006 WL 2331055 at *7 (S.D. Tex. Aug. 09, 2006) (The accommodation provisions of the Rehabilitation Act do not require public entities to guess an individual's need for an accommodation.).

Plaintiff also argues that he would have improved his performance and become qualified to be a medical student if the Medical School had given him the accommodation of the chance to respond to treatment for his depression. (Instrument No. 44, at 15). As Plaintiff points out, in

October 2008, after his second and final dismissal, Plaintiff emailed Dr. Colasurdo stating that he had been suffering from depression, and asking for a chance to respond to his medications and treatment under the care of a pyschiatrist.  (Instrument No. 44, at 9; Instrument No. 38-1, at 115).  Here, Plaintiff's email to Dr. Colasurdo, unlike Plaintiff's statements to Dr. McNeese and the SEPC committee, clearly stated that Plaintiff was depressed and seeking the chance to treat his depression.  However, even if Plaintiff's email constitutes a belated request for a reasonable accommodation, Plaintiff's argument that he could have performed better given a chance is supported only by the Declaration of Dr. Santos.  In his Declaration, Dr. Santos states that Plaintiff's symptoms have improved, but does not provide any specific examples of improvement, or explain how Plaintiff's abilities in cognitive and noncognitive areas such as clinical ability, interpersonal relations, and personal conduct and professional characteristics have improved.  (*See* Instrument No. 45, at 19).  Plaintiff's argument that he would have become qualified to be a medical student if he had received treatment is conclusory at best.

Finally, Plaintiff argues that the Medical School discriminated against him by dismissing him.  (Instrument No. 44, at 14).  However, rather than discriminating against Plaintiff, the Medical School offered Plaintiff more than one chance to succeed.  In July 2006, Plaintiff was dismissed by the SEPC committee after the committee had discussed Plaintiff's first-year incidents with a female student who alleged that he harassed her and a Hispanic student who was offended by an article he wrote, as well Plaintiff's failing grade in Physical Diagnosis, a second-year requirement.  (See Instrument No. 38-1, at 71).  However, in August 2006, after Plaintiff's dismissal by the SEPC committee, Plaintiff wrote an appeal letter to Dr. Wolinsky stating that

Dr. McNeese had offered the school's counseling services to him. (Instrument No. 38-1, at 73). In addition, as part of Plaintiff's appeal, the Medical School sought information about whether Plaintiff was depressed by sending him to Dr. Axelrad and Dr. Tarbox for psychiatric and cognitive evaluations. (Instrument No. 38-1, at 129). The evaluations found that Plaintiff was not suffering from any psychiatric disorder or impairment (Instrument No. 39-1, at 11, 17, 23), and Plaintiff was reinstated as a medical student with the warning that "any further irregular behavior will be grounds for your dismissal." (Instrument No. 38-1, at 79). Following Plaintiff's reinstatement as a student, Plaintiff appeared before the SEPC committee for a second time in July 2007 because he attempted to take an exam in one of his third-year courses one month early without permission. (Instrument No. 38-1, at 11, 133). Despite Plaintiff's previous dismissal and warning, the SEPC voted not to dismiss him. (Instrument No. 38-1, at 11, 134). Finally, in July 2008, after Plaintiff earned a marginal performance in his third-year Cardiology elective, he appeared before the SEPC committee for a third time. (Instrument No. 38-1, at 12, 134, 136). The SEPC committee decided to dismiss Plaintiff, and Dr. Colasurdo upheld the SEPC committee's dismissal based on Plaintiff's cumulative record. (Instrument No. 38-1, at 99, 117). In light of the fact that the Medical School offered counseling to Plaintiff, conducted a psychiatric and cognitive evaluation of Plaintiff, and allowed Plaintiff an opportunity to continue his medical studies after his first dismissal, the Court finds that there is no evidence of discriminatory intent or disparate impact in the Medical School's decision to dismiss Plaintiff, and defers to the Medical School's decision to dismiss him. *McGregor*, 3 F.3d at 859 (Absent

evidence of discriminatory intent or disparate impact, the Court must accord reasonable deference to the school's decisions.).

For the above reasons, Plaintiff has not shown that he was capable of satisfying the Medical School's academic and technical requirements with the aid of reasonable accomodations. Accordingly, the Court finds that Plaintiff has not established that he was otherwise qualified for his position as a medical student.

c.

Finally, Plaintiff must establish that his dismissal was solely because of his disability. *Soledad v. U.S. Dep't. of Treasury*, 304 F.3d 500, 504-505 (5th Cir. 2002). However, as discussed above, the Medical School gave Plaintiff more than one chance to succeed and was not provided with definitive evidence of Plaintiff's depression until after Plaintiff's second dismissal. Rather than trying to discriminate against Plaintiff, the Medical School attempted to help him by offering the opportunity to correct his behavior and prove or establish the existence of a disability before he was finally terminated. Accordingly, the Court finds that Plaintiff has not established that his dismissal was solely because of his disability.

For the above reasons, the Court finds that Plaintiff has not established a *prima facie* case of discrimination under the Rehabilitation Act.

2.

Plaintiff argues that after Plaintiff has established a *prima facie* case, the burden then shifts to Defendant to show that Plaintiff did not have a disability. (Instrument No. 44, at 15). However, as the Court found above, Plaintiff has not established a *prima facie* case. In addition,

43

Plaintiff has also misstated the Defendant's burden under the *McDonnell Douglas* framework. Assuming *arguendo* that Plaintiff had been able to establish a *prima facie* case, the burden then shifts to Defendant to produce evidence of a legitimate, nondiscriminatory reason for the action that adversely affected Plaintiff. *See Handy*, 118 Fed. Appx. at 854; *Kurth v. Gonzales*, 472 F.Supp.2d 874, 878 (E.D. Tex. 2007).

 As discussed above, the Medical School has provided evidence showing that Plaintiff was dismissed in part due to his difficulties getting along with others, including his first-year incidents with the female student who alleged that he harassed her and the Hispanic student who was offended by his article, as well as his third-year attempt to take an exam early without permission. The Medical School has also provided evidence showing that Plaintiff was dismissed in part due to his grades, including his initial failing grade in Physical Diagnosis, and his marginal performance in Cardiology. Under the Medical School Policies, Plaintiff's interpersonal difficulties and grades are both factors in evaluating Plaintiff's suitability to be a medical student. (*See* Instrument No. 38-1, at 21). The Medical School's decision to dismiss Plaintiff based on his interpersonal difficulties and grades is thus consistent with Medical School Policies. Plaintiff has not argued that the Medical School Policies are illegitimate or discriminatory, and the record does not contain any evidence suggesting that the Medical School Policies are illegitimate or discriminatory. Accordingly, the Court finds that Defendant has proffered a legitimate, nondiscriminatory reason for Plaintiff's dismissal.

3.

Once the defendant proffers a legitimate, nondiscriminatory reason for Plaintiff's dismissal, the inference of discrimination raised by the *prima facie* case drops from the case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden then shifts back to the plaintiff to show evidence that the proffered explanation is only a pretext. *Handy*, 118 Fed. Appx. at 854; *Kurth*, 472 F.Supp.2d at 878.

Here, the record shows that the Medical School attempted to help Plaintiff, rather than discriminate against him. As discussed above, the Medical School offered Plaintiff counseling services, and gave him a second chance to prove himself by reinstating him as a medical student after his first dismissal. (*See* Instrument No. 38-1, at 73, 79). During the appeal process for Plaintiff's first dismissal, the Medical School also offered Plaintiff the opportunity to prove or establish the existence of a disability, by sending him to Dr. Axelrad and Dr. Tarbox for pyschiatric and cognitive evaluations. (*See* Instrument No. 38-1, at 129). Although Plaintiff argues that he was discriminated against because of his depression, Plaintiff did not provide the Medical School with a diagnosis of depression until after his second and final dismissal. (See Instrument No. 38-1, at 115, 121; Instrument No. 45, at 18). These facts do not support a finding of pretext. Accordingly, the Court finds that Plaintiff has not shown that Defendant's reason for dismissing him was a pretext.

Because Plaintiff has not established a *prima facie* case of discrimination or shown that Defendant's reason for dismissing him was a pretext, Plaintiff's claim that Defendant discriminated against him in violation of Section 504 of the Rehabilitation Act fails as a matter of law.   Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment. **(Instrument No. 38).**

VI.

For the foregoing reasons, Defendant's Motion for Summary Judgment **is GRANTED**. **(Instrument No. 38)**.  Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence is **DENIED.  (Instrument No. 48)**.

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the _____ day of December, 2010, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**